UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIMBERLY BELLACE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-00136-K |
| | § | |
| HARTFORD LIFE AND ACCIDENT | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Hartford Life and Accident Insurance Company's (the "Defendant" or "Hartford") Motion for Judgment on the Administrative Record Under Rule 52 (the "Defendant's Motion") and an accompanying brief and appendix in support (Doc. Nos. 30-33) as well as Plaintiff Kimberly Bellace's (the "Plaintiff or "Ms. Bellace") Motion for Judgment on the Record under Rule 52 and accompanying brief (the "Plaintiff's Motion")(Doc. Nos. 29, 35). The Parties have each filed opposition briefs and replies (Doc. Nos. 36-39).

After the Court's careful *de novo* review of the administrative record in this Employee Retirement Income Security Act ("ERISA") benefits appeal, the Court finds that Ms. Bellace fails to establish by a preponderance of the evidence that, at the time her disability benefits were terminated, that she was unable to work at any reasonable occupation due to illness or injury, and thus fails to prove she was disabled under the terms of the policy, as she must to prove that the termination of her benefits was

incorrect and be entitled to relief. Accordingly, the Defendant's Motion for Judgment on the Administrative Record is **GRANTED**, Plaintiff's Motion for Judgment is **DENIED as moot**, and the Court will separately enter Final Judgment for Defendant.

## I. BACKGROUND

This is a suit to challenge the denial of a long-term disability benefit under a group insurance plan regulated by ERISA. Ms. Bellace is a 34-year-old mechanical engineer who was approved for long-term disability by her employer's group insurer Hartford after she underwent spine surgery in July of 2016. After three years of payments, by August of 2019 the insurer began to further investigate Ms. Bellace's claim, obtained an independent medical exam to evaluate Ms. Bellace's capacity for work, and performed a vocational and labor market analysis to determine whether given her physical capacity for work and her education, training and experience, she continued to be entitled to disability benefits under the policy.

As a result of its investigation, medical examination, and labor and vocational analysis, in April of 2020 Hartford determined, though Ms. Bellace's complaints of pain were credible, she could nonetheless work part-time six-hours a day in a sedentary role with only modest limitations. Hartford concluded that, through such work, Ms. Bellace could earn at least 60% of her indexed pre-disability earnings, such that she no longer qualified as disabled under the policy. Accordingly, Hartford terminated Ms. Bellace's disability claim, effective May 2020.

After Ms. Bellace appealed her termination utilizing the plan's appeals process, the insurer considered new information provided by Ms. Bellace and her providers and obtained an independent medical review in November of 2020. As a result of further review of Ms. Bellace's appeal that continued into March of 2021, the insurer determined that its prior determination that Ms. Bellace could perform sedentary work with modest physical limitations was correct. The independent medical reviewer retained for the appeal found that Ms. Bellace could even work full-time, so long as such work was in a sedentary role. Accordingly, in April of 2021, Hartford denied Ms. Bellace's appeal and upheld its termination of Ms. Bellace's claim.

In January of 2024, Ms. Bellace brought a Complaint in this Court to appeal Hartford's denial of her claim under ERISA's civil enforcement provisions at 29 U.S.C. § 1132(a)(1)(B). Doc. No. 1 at 2, ¶5. The Parties filed cross Motions for Judgment pursuant to Rule 52 which are briefed and ripe to decide. Doc. Nos. 30, 35.

**II.    STANDARD OF REVIEW**

A Rule 52 motion for judgment on the administrative record is "essentially a bench trial on the record." *Pike v. Hartford Life and Accident Ins. Co.*, 368 F. Supp. 3d 1018, 1030 (E.D. Tex. 2019) (citation omitted); FED. R. CIV. P. 52(a). "Using Rule 52 is effective in an ERISA context because courts may resolve factual disputes and legal finding without resorting to cross motions for summary judgment." *Id.* "In a trial on the administrative record, a district judge reviews the evidence to determine whether the Plaintiff is disabled under the policy." *Id.* "In a trial on the record, the judge can

evaluate the persuasiveness of conflicting [evidence] and decide which is more likely true." *Id.*

In determining an action that is "tried on facts without a jury" pursuant to Rule 52, a court must "find the facts specifically and state its conclusions of law separately." FED. R. CIV. P. 52(a). However, "Rule 52(a) does not require that the district court set out [its] findings on all factual questions that arise in a case." *Pike*, 368 F. Supp. 3d at 1030 (citing *Koenig v. Aetna Life Ins. Co.*, 2015 WL 6654347, at *3 (S.D. Tex. Oct 29, 2015), *aff'd sub nom*. *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461 (5th Cir. 2018)(citations omitted)) "Nor does it demand "punctilious detail [or] slavish tracing of the claims issue by issue and witness by witness." *Koenig*, 2015 WL 6554347, at *3 (citations omitted). "Rather, a court's findings are sufficient to satisfy Rule 52 if they afford the reviewing court a clear understanding of the factual basis for the trial court's decision." *Id.*

ERISA governs many aspects of the provision of employers' group insurance and other benefits plans, and 29 U.S.C. § 1132(a)(1)(B) provides that federal courts have jurisdiction to review individual benefits determinations by the ERISA plans' fiduciaries or plan administrators. *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 520-21 (5th Cir. 2000). "When an ERISA plan grants an administrator discretionary authority to interpret the plan's terms and determine benefit eligibility, the court reviewing the denial of a claim must assess whether the administrator abused that discretion… but when no discretionary authority is granted,

the court reviews the claim denial *de novo*." *Moore v. Unum Life Ins. Co. of Am.*, 2023 WL 2587484 at *2 (N.D. Miss. Mar. 21, 2023)(citing *Ariana M. v. Humana Health Plan of Tex., Inc.,* 884 F.3d 246, 247 (5th Cir. 2018)).

"The court must, in a *de novo* ERISA review, 'independently weigh the facts and opinions in the administrative record to determine whether the claimant has met [her] burden of showing [she] is disabled within the meaning of the policy.'" *Moore*, 2023 WL 2587484 at *2 (N.D. Miss. Mar. 21, 2023)(quoting *Pike*, 368 F. Supp. 3d at 1030). Further, in a *de novo* review a court must evaluate whether a plaintiff is "disabl[ed] as that term defined under the policy" since "a diagnosis is not the same as a disability." *Pike*, 368 F. Supp. 3d at 1034 (quotation omitted). The "*de novo* standard of review allows the court to examine all of the evidence in the record and decide whether or not the Plaintiff is totally disabled without giving any deference to the plan administrator's decision to deny or terminate disability benefits." *Id*.

"The plaintiff bears the burden of proving she is disabled by a preponderance of the evidence." *Pike*, 368 F. Supp. 3d at 1031 (citing *Gileswski v. Provident Life & Accident Ins. Co.,* 683 F. App'x 399, 406 (6th Cir. 2017)). "The burden of proof does not change because a plaintiff qualified at one point in time for disability benefits and the benefits were later terminated when she no longer qualified." *Id.* at 1072.

### III.   FINDINGS OF FACT

The Court has carefully reviewed the extensive administrative record which spans more than three thousand dense pages. *See* Doc. Nos. 33-1, 33-2, 33-3, 33-4,

33-5, 33-6. The record includes Ms. Bellace's medical records from many years before her claim, Hartford's lengthy records relating to her claim's initial approval, later investigation, subsequent termination, and sustained appeal, as well as the extensive correspondence Ms. Bellace submitted to support her administrative appeal.

Given the voluminous record, the Court declines to "punctiliously detail" or "slavishly trace" the "claims issue by issue or witness by witness" but will present the following chronological findings to provide the "reviewing court a clear understanding of the factual basis for [the Court's] decision." *Pike*, 368 F. Supp. 3d at 1030.

At the time of her initial claim, Ms. Bellace was 26 years old, and after graduating from Texas A&M with a degree in mechanical engineering, worked as a Mechanical Design Engineer at a defense contractor L-3 Communications for seven years. Doc. No. 33-1 at 6; Doc. No. 33-2 at 888-89. Unfortunately, beginning in 2011, Ms. Bellace also suffered from back pain, which ultimately led her to take a medical leave from her employment to undergo back surgery in August of 2016. Doc. No. 33-2 at 1165; *Id.* at 660.

Prior to pursuing surgery, Ms. Bellace had for several years attempted to address her back pain with conservative treatment including exercise, pain medications, physical therapy, spinal injections, and chiropractic adjustments, to no avail. Doc. No. 33-2 at 127-165. After finding insufficient relief from more conservative approaches, Ms. Bellace had an operation to fuse her spine performed by an orthopedic surgeon, Dr. Viere. Doc. No. 33-2 at 654-66.

6

Following her surgery, her employer's long-term disability plan then administered by Aetna, subsequently by Hartford as successor-in-interest, approved Ms. Bellace's disability, based on a slow recovery, need for additional treatment, and Dr. Viere medical opinion as attending physician that she was unable to work. Doc. No. 33-1 at 518-21.

Unfortunately, after she recovered from surgery, Ms. Bellace's back pain issues were not resolved. Over the next few years, Ms. Bellace sought relief through physical therapy, prescriptions for pain medications and repeated spine injections. Doc. No. 33-2 at 410-52; *Id.* at 464-78. In in June 2017, a lumbar spinal cord stimulator was surgically installed. Doc. No. 33-2 at 471-72; 480-83. The stimulator did not reduce her pain, and, in April 2018, the stimulator was removed. Doc. No. 33-2 at 484-85.

During this period, Ms. Bellace continued to consult with her surgeon, Dr. Viere, who repeatedly reported to Hartford that Ms. Bellace was permanently disabled and unable to work because of her continuing pain. *See* Doc. No. 33-1 at 280, 300. As a result of Dr. Viere's assessment, Ms. Bellace's continued pain, and active ongoing treatments, during this period Hartford continued to pay Ms. Bellace her monthly disability benefit, even though after receiving twenty-four months of disability payments, she was required to meet a more stringent "any occupation" test to continue to be disabled pursuant to the language of her policy rather than the less stringent "own occupation" test under which she first qualified. *Id.*; *see also* Doc. No. 32-1 at 8.

7

In early 2019, Hartford began to question whether Ms. Bellace's claimed disability was medically supported. Doc. No. 33-1 at 492. To assess these concerns, Hartford first obtained updated medical records from Ms. Bellace's providers. *Id.* After noting that the records obtained contained references to jumping rope and participating in cycling class, Hartford arranged for a third-party private investigator to surveil Ms. Bellace on several days in August and September of 2019 to gain its own independent view of Ms. Bellace's real-life limitations. Doc. No. 33-1 at 491. The surveillance showed Ms. Bellace staying at home on some days, but on other days, showed her driving, walking, lifting, bending and pushing while running various errands including shopping for groceries, taking her dog to the vet, getting an oil change and stopping for coffee, all without any apparent physical limitation. *Id.* at 656-58; Doc. No. 33-6 at 49, 53-62.

Hartford then arranged for a claims examiner to meet Ms. Bellace at a coffee shop in person in October 2019 to observe her and take a recorded statement. Doc. No. 33-1 at 363. In the meeting the claims adjuster observed she "ambulated normally in a slow but smooth manner" and "did not report pain or difficulty with walking" but she "stood up once because of pain to her low back and hips." *Id.* In the meeting, Ms. Bellace explained the physical limitations she felt she faced due to her pain but also admitted to performing activities of daily living as well also walking for exercise, driving and going on errands, and traveling by plane twice to Mexico and driving to Houston once while she was on disability. Doc. No. 33-6 at 38-39,49-52.

In parallel with attempting to determine Ms. Bellace's actual medical limitations, Hartford began assessing whether Ms. Bellace was fitted or had the reasonable ability to get fitted to engage in other employment such that would make her not disabled under the "other occupation" disability test which then applied under her policy. Doc. No. 32-1 at 8, 22-23. Specifically, although Ms. Bellace initially qualified for disability under the broader coverage of her policy's "own occupation" provision which applied during the first 24 months of her claim, after 24 months of claim payments, Ms. Bellace's policy required Ms. Bellace to be "unable to work at any reasonable occupation solely because of [her] illness or injury" to be entitled to continued disability. Reasonable occupation was defined in the policy as "any gainful activity for which [she] is or may reasonably become fitted by education, training or experience, and which results in or can be expected to result in an income of more than 60% of [her] pre-disability earnings." *Id.*

Therefore, while assessing Ms. Bellace's capacity for work, Hartford also engaged vocational specialist to analyze whether in her present capacity, based on Ms. Bellace's education, training, or experience, she was fit to perform, or could be reasonably become fit to perform, any gainful activity that would meet the 60% indexed pre-disability earnings test. Doc. No. 33-1 at 400. This analysis indicated that based on her engineering education and professional experience Ms. Bellace could be fit to perform, or could become fit to perform, as many as 83 potential occupations, and identified five including tool planner, logistics engineer, materials scheduler, credit

9

analyst, claims examiner that the vocational analyst determined might be a better fit, and could accommodate modest physical limitations and/or part time work. *Id.* Hartford then performed a labor market study to confirm that one these jobs could provide Ms. Bellace employment at an hourly wage sufficient to meet the policy's 60% of pre-disability index standard necessary to be ineligible for disability coverage. *Id.*

To conclude its view on Ms. Bellace's actual limitations, in March of 2020, Hartford arranged for an Independent Medical Exam to be conducted by a third-party physician, Dr. Marchetti, who reviewed Ms. Bellace's medical file and met with, and physically examined, Ms. Bellace in person. Doc. No. 33-1 at 381. In his independent medical examiner's report, Dr. Marchetti, Board Certified in Physical Medicine and Rehabilitation, concluded that Ms. Bellace presented credible complaints of pain, and had some physical limitations due to her pain, but determined that she could work a six-hour day with only modest limitations to her physical activity. Doc. No. 33-1 at 398, 666.

In March of 2020, Ms. Bellace's surgeon Dr. Viere responded to Dr. Marchetti's report with a written statement challenging the report's conclusions and asserting that Ms. Bellace was permanently disabled and unable to work due to her pain. Doc. No. 33-1 at 389. Hartford determined that Dr. Viere's statement did not offer any new clinical evidence not already considered by Dr. Marchetti in his assessment of Ms. Bellace's functional capacity. Doc. No. 33-1 at 66.

In April 2020, Hartford determined that since Dr. Marchetti had found that Ms. Bellace could work six hours a day in job with modest physical limitations, and further found the vocational and labor market analysis identified several occupations in which she could work part-time within the limitations determined by Dr. Marchetti and meet 60% of her pre-disability earnings, Hartford determined Ms. Bellace was no longer disabled pursuant to the "any occupation" provision of her policy, terminated her disability claim as of May 2020, and informed her of her of her right to appeal. Doc. No. 33-1 at 665-67.

Hartford granted Ms. Bellace an extended time to appeal her claim's denial, and in October of 2020, she submitted along with a letter detailing her objections to the independent medical exam, a large volume of historical medical records, as well as many other additional medical records relating to consults and treatments which occurred after her claim was terminated in April 2020. Doc. No. 33-2 at 560-92.

In October 2020, Hartford arranged for a third-party independent medical review of Ms. Bellace's claim, including reviewing all the new records submitted by Ms. Bellace. Doc. No. 33-1 at 751-53. In addition, since Ms. Bellace had objected to the conclusions arrived at by Dr. Marchetti since he was not a neurological specialist, Hartford arranged to for this independent medical review to be completed by Dr. Hoenig, a Board-Certified Neurologist and Pain Medicine specialist. *Id.*

In November 2020, Dr. Hoenig reviewed the previously reviewed and newly submitted medical records, materials and spoke with Dr. Morsy, Ms. Bellace's pain

11

specialist. *Id.* Dr. Hoenig twice called Dr. Viere, Ms. Bellace's spine surgeon, but Dr. Viere did not return his call. *Id.* Dr. Hoenig completed his independent review and found that Ms. Bellace's complaints of pain were credible, and based on these complaints, as well as lumbar and sacroiliac tenderness, determined that modest restrictions and limitations to Ms. Bellace's work were medically warranted. *Id.* Specifically, Dr. Hoenig indicated she should not more than "occasionally lift 20 pounds, frequently lift 10 ponds and frequently bend, stoop, kneel, crouch, crawl and climb." *Id.* Notably, Dr. Hoenig's restrictions would not prevent Ms. Bellace's full-time work. *Id.* While Dr. Hoenig deferred to questions Ms. Bellace's letter raised about her pain in her left foot and ankle to other specialties, notably, he did not find the record he reviewed to support any restriction on Ms. Bellace working only six hours per day due to her back pain. *Id.* A nurse reviewer at Hartford reviewed Ms. Bellace's left foot and ankle concerns, noted that the specific actions Ms. Bellace could perform as assessed by Dr. Hoenig were similar to those assessed by Dr. Viere in his May 2020 attending physician statement, and thus concluded that Ms. Bellace could engage in full-time sedentary work in spite of her left foot and ankle concerns if she was allowed to shift in her seat and get up to stretch as needed. *Id.*

In November 2020, Dr. Viere submitted a written statement to challenge Dr. Hoenig's report, asserting that Ms. Bellace was limited by her pain, and he did not feel she could maintain employment given her need to rest and the potential impact of her pain medication. *Id.* Dr. Hoenig reviewed Dr. Viere's letter and found that it failed to

contain any updated medical history, physical examination or diagnostic studies that would alter his previous assessment that Ms. Bellace could engage in full-time work with only modest physical restrictions and limitations. *Id.*

After Hartford granted Ms. Bellace several extensions of time to respond, Ms. Bellace submitted a letter in March of 2021 challenging the appeals process and attaching a lengthy chronology and extensive appendix with many additional medical records, other exhibits, purported corrections and rebuttals. Doc. No. 33-2 at 18-42. These documents were again provided to Dr. Hoenig to independently review. Doc. No. 33-1 at 753.

As part of his independent review of the additional documents submitted by Ms. Bellace, Dr. Hoenig again called Dr. Viere to seek his consultation. *Id.* This time Dr. Hoenig was advised by Dr. Viere's staff, that Dr. Viere would defer on the pain management aspects of Ms. Bellace's impairment to her pain management doctor since Dr. Viere was an orthopedic surgeon. *Id.* Since the pain management specialist Dr. Morsy did not indicate he thought Ms. Bellace was not unable to work, and in fact, had previously deferred to Dr. Viere on Ms. Bellace's limitations, Dr. Hoenig concluded that his finding that Ms. Bellace could engage in full-time sedentary work with only modest limitations remained unchanged. *Id.*

On April 26, 2021, Hartford determined that as of May 2020, Ms. Bellace was no longer disabled pursuant to its policy and rejected Ms. Bellace's appeal, since Dr. Hoenig's independent medical review confirmed the prior findings of Dr. Marchetti's

independent medical exam that Ms. Bellace was no longer unable to work and could work in a sedentary job for 6 hours a day, if not more, with only modest physical limitations, and Hartford's labor and vocational analysis indicated that through this work, Ms. Bellace could earn 60% of her pre-disability indexed income. Doc. No. 33-1 at 750-55.

## IV. CONCLUSIONS OF LAW

As an initial matter, the Court finds it must undertake a *de novo* review, since prior to litigation Hartford expressly waived any discretionary authority to interpret the policy's terms or determine benefit eligibility the plan might have provided. Doc. No. 33-1 at 754. Accordingly, the Court will conduct a *de novo* review and independently review the administrative record to determine whether Ms. Bellace has met, by a preponderance of evidence, her burden of proof to establish she was entitled to coverage for her claim under the terms of the policy, and the insurer's termination was thus incorrect. *See Pike*, 368 F. Supp. 3d at 1030-34.

The Court finds Ms. Bellace has not met her burden of proof to establish by a preponderance of the evidence that she is disabled and thus entitled to coverage for her claim under the terms of her policy. To meet her burden of proof, Ms. Bellace must establish by a preponderance of the evidence that she is "unable to work at any reasonable occupation solely because of her illness or injury… in any gainful activity for which [she] is or may reasonable become fitted by education, training or experience,

and which results in or can be expected to result in an income of more than 60% of [her] pre-disability earnings." Doc. No. 32-1 at 8, 24-25.

Thus, to meet her burden of proof, Ms. Bellace must first prove that she is "unable to work… due to her injury or illness" and, second, prove her injury or illness prevents her from working "at any reasonable occupation… in any gainful activity for which [she] is or may reasonably become fitted by education, training or experience, and which results in or can be expected to result in an income of more than 60% of [her] pre-disability earnings." *Id.*

After carefully weighing the evidence in the administrative record in light of the arguments raised in the Parties' briefs and the applicable law, the Court finds that by a preponderance of the evidence, Ms. Bellace fails to prove either of the two required prongs of the policy's disability test, and thus she fails to prove she had a covered disability as of the time of her claim's termination.

### A. Ms. Bellace fails to prove she is unable to work due to her illness or injury

In considering the first prong of the policy's disability test, although the Court does not doubt that Ms. Bellace has greatly suffered, and has the utmost sympathy for her long-term health challenges, the Court finds after careful review of the administrative record before the Court, Ms. Bellace fails to establish by a preponderance of the evidence that she is unable to work due to her illness or injury.

In particular, the Court has weighed all the evidence in the record and credits the medical evidence of the third-party independent medical exam and subsequent

independent medical review, each which credibly establish that, despite her pain, Ms. Bellace is able to perform sedentary work, with only modest physical limitations. The Court finds that these two independent physicians' assessments that despite her pain, Ms. Bellace can work with some modest limitations, are thorough, credible, and congruent with the broader evidence in the administrative record.

In contrast, although the Court carefully considered Dr. Viere's repeated assertions that Ms. Bellace is permanently disabled and unable to work, the Court finds this orthopedic surgeon's assertions about Ms. Bellace's pain-related limitations to be conclusory rather than well-supported, and thus, as *ipse dixit*, can be given little weight by the Court. Even more importantly, Dr. Viere's staff communicated to Dr. Hoenig that that Dr. Viere deferred on the determination of Ms. Bellace's pain-related limitations in favor of Ms. Bellace's pain management specialist. Further, Dr. Morsy, Ms. Bellace's pain management specialist, to whom Dr. Viere deferred, did not opine Ms. Bellace was unable to work. Therefore, the Court finds there is no opinion in the administrative record from any medical provider asserting that Ms. Bellace remained unable to work due to illness or injury at the time of her claim's termination.

For these reasons, the Court finds Ms. Bellace fails to establish by a preponderance of the evidence that she was unable to work due to illness or injury as of the date of her termination, and since she has failed to establish a required element of her proof to establish coverage for her claim for coverage under the policy, she necessarily also fails to establish her entitlement to the relief she seeks from this Court.

**B. Ms. Bellace fails to prove she cannot work in any reasonable occupation**

In addition to Ms. Bellace's failure to prove the first prong of the policy's disability test, the Court finds that Ms. Bellace also fails to prove the second. To prove she was disabled pursuant to the policy, Ms. Bellace must also establish by a preponderance of the evidence the second prong of the disability test, which is that she could not be reasonably employed in "any gainful activity for which [she] is or may reasonably become fitted by education, training or experience" that meets the 60% of her pre-disability indexed earnings. Doc. No. 32-1 at 24-25. After careful review of the administrative record, the Court finds that Ms. Bellace has failed to cite to any evidence, let alone establish by a preponderance of the evidence, that she could not be reasonably employed in any occupation as required to be entitled to benefits, as she would have to, if, arguendo, she had established she was unable to work. Since the claimant bears the burden of proof on all required elements for coverage, even if Ms. Bellace had proven she was unable to work, her failure to establish by a preponderance of the evidence that she could not replace 60% of her pre-disability indexed income by engaging in some other gainful activity as defined by the policy, is fatal to claim.

In contrast, the Court finds that the record contains evidence that Hartford conducted a vocational assessment which determined that Ms. Bellace, a college-educated mechanical engineer with seven years of experience had developed advanced technical, computer and professional skills, that would allow her to perform or become fitted to perform, other gainful activity in other roles which could accommodate her

17

modest physical limitations. Hartford then conducted a labor market analysis to confirm that such roles could provide Ms. Bellace earnings of 60% of her indexed pre-disability earnings on a part-time-basis, working only 30 hours a week. The Court takes note that Ms. Bellace challenges several aspects of the Hartford's labor and vocational evidence, and although the Court considered her challenges in weighing Hartford's evidence, since she, not Hartford, bears the burden of proof, Ms. Bellace's failure to cite specific evidence that she is not employable, to controvert the evidence Hartford marshalled to show that she is, is fatal to her claim.

Finally, the Court finds from its careful review of the administrative record, that Ms. Bellace's engineering education, professional work experience and computer and other technical skills will allow her to be, or allow her to become fitted to be, reasonably employed in many other gainful activities, in which she more likely than not, would be able to meet the 60% indexed pre-disability earnings threshold and thus, by a preponderance of the evidence, is not disabled as defined by her policy.

For these reasons, the Court finds Ms. Bellace fails to establish by a preponderance of the evidence that she was unable to work in any reasonable occupation, as defined by the policy, as of the date of her termination, and since she has failed to establish a required element of her proof to establish coverage for her claim under the policy, she also necessarily fails to establish entitlement to the relief she seeks from this Court.

For these two reasons, after careful review of the administrative record now before the Court, the Court finds by a preponderance of the evidence that, as of May 2020, Ms. Bellace was no longer disabled as defined under the policy, and thus Hartford's termination of her claim in April of 2020 and Hartford's denial of her appeal in April of 2021 were each correct as a matter of law, and Ms. Bellace is not entitled to any relief from this Court.

## V. CONCLUSION

After the Court's careful *de novo* review of the administrative record in this Employee Retirement Income Security Act benefits appeal, the Court finds that Ms. Bellace fails to establish by a preponderance of the evidence that, at the time her disability benefits were terminated, that she was unable to work at any reasonable occupation due to illness or injury, and thus fails to prove she was disabled under the terms of the policy, as she must to prove that the termination of her benefits was incorrect and be entitled to relief.  Accordingly, the Defendant's Motion for Judgment on the Administrative Record is GRANTED, Plaintiff's Motion for Judgment is DENIED as moot, and the Court will separately enter Final Judgment for Defendant.

**SO ORDERED.**

Signed August 13th, 2025.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE